IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| DANNY SARTAIN,<br><br>　　　　　　Petitioner,<br><br>vs.<br><br>LEROY KIRKEGARD, Warden Montana State Prison; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>　　　　　　Respondents. | CV 12–80–BU–DLC<br><br>ORDER<br><br>**FILED**<br>DEC 0 2 2013<br>Clerk, U.S. District Court<br>District Of Montana<br>Missoula |

Petitioner Danny Sartain, a state prisoner proceeding *pro se*, has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Sartain argues that his 2009 conviction and sentence violate due process for several reasons: (1) he was denied a speedy trial; (2) he received ineffective assistance of counsel in four respects; (3) the prosecution improperly withheld evidence; and (4) appellate counsel failed to raise "all issues" regarding his right to a speedy trial and failed to challenge the prosecutor's alleged misconduct.

United States Magistrate Judge Carolyn Ostby conducted a preliminary screening of the Petition as required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. Under Rule 4, the Petition must

1

be summarily dismissed if "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the District Court." If summary dismissal is not warranted, the Court must order the Respondent to file an answer, motion, or other response, or to take some other action.

On August 7, 2013, Judge Ostby issued Findings and Recommendations (Doc. 14) in which she concluded that the Court should deny the petition on the merits, and deny a certificate of appealability. Judge Ostby did not address the procedural grounds on which some of Sartain's claims may be barred, but instead dispensed with the claims on the merits. Sartain timely filed a lucid and well organized objection to "all adverse rulings in the Findings and Recommendation," (Doc. 17) thereby preserving his right to de novo review of the record. 28 U.S.C. § 636(b)(1). Because the parties are familiar with the uncontested procedural and factual background of this case, it will not be restated here.

## I. Speedy Trial Claim

Judge Ostby correctly applied the balancing test established by the Supreme Court in *Barker v. Wingo* to determine whether a petitioner's Constitutional right to a speedy trial has been violated. 407 U.S. 514 (1972). Under *Barker*, courts consider the conduct of both the prosecution and the defense, and weigh four factors: "[1] length of the delay, [2] the reason for the delay, [3] the defendant's

assertion of his right, and [4] prejudice to the defendant." *Id.* at 530. None of these four factors is "either a necessary or sufficient condition to the finding of a depravation of the right of speedy trial. Rather they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533. Judge Ostby recommended that since the balance of these factors weighs against Sartain, the speedy trial claim should be dismissed.

As to the first factor, recognized by the *Barker* Court as a "triggering mechanism," *id.* at 530 ("The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go in the balance"), Judge Ostby found that the trial commenced 357 days after Sartain's arrest at the scene of the crime, and concluded that such a delay "barely" warranted a closer look into the other factors. As to the second factor, Judge Ostby found that both delays were initiated by defense counsel and prolonged by significant institutional delay, and that the delays were not created or exploited by the State, nor did they result in the loss of defense evidence or witnesses. Sartain does not challenge Judge Ostby's findings on the first two *Barker* factors, which the Court will accept.

As to the third factor, Judge Ostby concludes that although Sartain asserts that he did not know of or agree to the delays initiated by his counsel, he is

responsible for his counsel's requests for continuances. In his Objection, Sartain points to letters and a motion to dismiss that he had written to his counsel invoking his right to a speedy trial during the delay period (Doc. 12-23 at 20-22). He also points to several statements made by his counsel, arguing that they raise "red flags as to whether his attorney was putting the interests of his client first." (Doc. 17 at 9-10).

The Court has carefully reviewed the extensive record in this case, including the transcript of the February 24, 2009 hearing on Sartain's motion to dismiss for denial of a speedy trial (Doc. 12-3), and finds that the evidence related to the third *Barker* factor falls in the Respondents' favor.

In *Barker*, the Supreme Court states:

> Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

407 U.S. at 531-32. Sartain's trial was delayed for two reasons. At an omnibus hearing in August of 2008, the district court proposed a trial date in September 2008, but defense counsel was unavailable then due to his National Guard obligations. The court did not have any dates available in October, so it offered a trial date of November 3 and 5, 2004 (November 4 was Election Day). Defense counsel objected, on the basis that he believed three days would be necessary. The court then scheduled trial for the first three days it had available, beginning on March 17, 2009. Sartain was not present at the August omnibus hearing and learned about his trial date in September 2008.

On January 5, 2009, Sartain wrote to his counsel demanding that he file a motion to dismiss due to a speedy trial violation and included a draft of the motion he wanted filed. Counsel acquiesced and filed a motion to dismiss on January 8, 2009. The district court denied the motion on March 9, 2009 after holding a hearing on February 24, 2009.

"Because the attorney is the defendant's agent when acting, or failing to act, in furtherance of the litigation, delay caused by the defendant's counsel is also charged against the defendant. The same principle applies whether counsel is privately retained or publicly assigned . . . ." *Vermont v. Brillon*, 556 U.S. 81, 90-91 (2009) (internal citations and quotations omitted). Here, both delays were

prompted by defense counsel, and Sartain does not present sufficient evidence to support his bald claims that such requests "raise red flags" and were made with some ulterior motive. Accordingly, the delay defense counsel caused will be imputed to the Petitioner.

Petitioner did, however, assert his right to a speedy trial. The strength of this assertion "will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences." *Barker*, 407 U.S. at 531. Here, as discussed in relation to the first *Barker* factor, the delay was not egregious. *See also Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (federal speedy trial analysis is triggered as the delay "approaches one year"). The delays were prompted by defense counsel's requests. There is no evidence of prejudice: Sartain did not lose defense evidence or witnesses as a result of the delay, and the State did not exploit the delay to bolster its case or hamper the defense. In fact, the State was eager to go to trial as originally scheduled. Perhaps most significant is the fact that Sartain waited approximately four months to raise his objection to the trial date, a date which was the direct result of his counsel's requests. Sartain's timing and the fact that the delay was attributable to him leads the Court to agree with Judge Ostby, as well as the Montana district and Supreme Courts, that the

third *Barker* factor cuts against the Sartain.

Finally, under the fourth *Barker* factor, the Court determines if the trial delay prejudiced Sartain as to the interests that the right to a speedy trial is intended to protect: "(I) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired," which is the most serious of these interests. *Barker*, 407 U.S. at 532. Judge Ostby found that only the first interest was implicated here, since Sartain was arguably subjected to "somewhat harsher conditions of confinement at Montana State Prison than he would have been in a local jail."

In his Objection, Sartain focuses on the third interest listed above, claiming that the delay impeded his defense. Specifically, Sartain argues that since he was in custody: (1) he and his counsel were not able to sufficiently prepare him to take the stand, or even to adequately discuss the question of whether or not to take the stand; and (2) his ability to gather evidence, contact witnesses, or otherwise prepare his defense was impeded. However, Sartain fails to demonstrate how the trial delay caused any of these alleged prejudices. Sartain would be in pretrial custody regardless of the trial date, and less time in pretrial custody would not have given him increased opportunities to prepare his defense. Sartain's arguments are counterintuitive in that the delay actually resulted in additional time prior to

trial, which presumably could be used for trial preparation.

Sartain's defense was not impaired by the pretrial delay. The State did not cause or exploit the delay to bolster its case or to hinder the defense. The delay did not result in the loss of any defense witnesses or evidence. While Sartain did experience extended pretrial incarceration, all of the other *Barker* factors weigh against his speedy trial claim. Accordingly, Sartain's speedy trial claim will be dismissed consistent with Judge Ostby's recommendation.

## II. Ineffective Assistance of Counsel

The Supreme Court established the standard of review for claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). The proper standard for attorney performance is "reasonably effective assistance." *Id.* at 687. In order to succeed, Sartain must show that "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. If Sartain makes an insufficient showing on one of these elements, the Court need not address the other element. *Id.* at 697. Sartain alleges ineffective assistance of counsel in four respects.

## A. Show-Up Identification

Sartain's first claim is based on his trial counsel's failure to file pretrial motions challenging the show up identifications ascertained from Hop and Helsper. Judge Ostby correctly outlined the law governing show up identifications, including that the "primary evil to be avoided is a very substantial likelihood of irreparable misidentification." *Neil v. Biggers*, 409 U.S. 188, 198 (1972) (internal quotations omitted). "Short of that point, such evidence is for the jury to weigh." *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977). Judge Ostby concluded that there was no substantial likelihood of irreparable misidentification because neither Hop nor Helsper positively identify Sartain, and because at trial defense counsel spent considerable time and effort working to undermine the accuracy of eyewitness identification generally, and the accuracy of the identifications here.

Sartain's objections, if accepted by the Court, would essentially nullify the well established principle that "admission of evidence of a show up without more does not violate due process." *Neil*, 409 U.S. at 198. Sartain has not presented significant evidence of a substantial likelihood of irreparable misidentification, and the trial transcript reveals that neither witness positively identified Sartain as the person they saw. Thus, it was the province of the jury to weigh the show up

evidence, and defense counsel did not err by failing to challenge it. In fact, defense counsel deftly undermined the reliability of the show up witnesses at trial, and elicited responses to the reliability of eyewitness testimony in general at voir dire. The Court agrees with Judge Ostby that these measures, combined with the trial court's jury instruction regarding the suggestive circumstances of the show up, damaged the show up identifications to such an extent that there is no reasonable probability that Sartain would have been acquitted had they been excluded.

Counsel's representation did not fall below an objective standard of reasonableness. Even if counsel filed and the court granted a pretrial motion to exclude the show up the show up identifications, it is not reasonably probable that Sartain would have been acquitted. Accordingly, the Court will adopt Judge Ostby's recommendation and deny this claim.

## B. Pretrial Investigation of Fingerprints

Sartain's next claim relates to his counsel's failure to investigate fingerprint evidence found at the scene of the crime. Judge Ostby essentially found that the presence of prints belonging to someone other than Sartain is of no consequence unless there was other evidence tying that person to the crime or placing them near the scene at the time of the crime. Sartain objects, stating that an "analysis of the fingerprints will prove that someone other than Sartain committed the crime."

(Doc. 17 at 17). The Court disagrees with this tortured logic.

While the presence of Sartain's fingerprints would be compelling evidence against him, the absence of his prints or the presence of another person's prints does not prove, nor even permit the inference, that Sartain was not in the apartment. Thus, the absence of Sartain's fingerprints would have had no meaningful exonerating effect. Counsel's decision to forego testing of the partial prints was therefore reasonable. Furthermore, there is no reasonable probability that Sartain might have been acquitted even if counsel had obtained an independent analysis of the partial prints, and even if the prints were determined not to be his. Accordingly, the Court will accept Judge Ostby's recommendation and deny this claim.

## C. Failure to Object to Illegally Introduced Evidence

Sartain next claims that his counsel was ineffective because he did not object to Hop's testimony about the bracelet, which was not disclosed prior to trial. Judge Ostby concluded that counsel's decision to cross-examine rather than object, was reasonable. This Court agrees. The trial transcript demonstrates that counsel deftly addressed and undermined the testimony regarding the bracelet. While Sartain might not agree with counsel's decision on how to react to this evidence, the failure to object does not meet either prong of *Strickland*: it did not

11

fall below the objective reasonableness standard, and Sartain fails to convince the Court that there is reasonable probability that the outcome would have been different had counsel chosen to object rather than cross-examine. As with the show-up identification, counsel's actions related to the bracelet testimony undermined the reliability of that testimony to such an extent that there is no reasonable probability of acquittal had the testimony been objected to and excluded. Accordingly, the Court will accept Judge Ostby's recommendation and deny this claim.

## D. Defendant's Testimony

Sartain claims that counsel prevented him from testifying. Judge Ostby concluded that counsel clearly told Sartain that he had the right to testify, thus satisfying his obligation. Sartain objects, stating that counsel's conduct fell below a professional standard, and had he been allowed to testify, there is a reasonable probability that the outcome would have been different. The Court disagrees on both points.

The Ninth Circuit has clearly held that a "court has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred. When a defendant is silent in the face of his attorney's decision not to call him as a witness, he has waived his right to testify."

*United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993). The trial transcript reveals that counsel clearly told Sartain had the right to testify. Sartain waived that right by failing to assert it. Furthermore, Sartain's Objection presents no argument or evidence as to a reasonable probability of acquittal had he testified. The Court will accept Judge Ostby's recommendation and deny this claim.

### III. Prosecutorial Misconduct

Judge Ostby found that there was no prosecutorial misconduct as to the bracelet testimony because there is no evidence suggesting that the State knew it to be false, and thus had no obligation to correct it. Sartain objects, stating that the prosecution's failure to disclose the testimony related to the bracelet amounts to a *Brady* violation.

In the seminal case of *Brady v. Maryland*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). The testimonial evidence involving the bracelet is in no way exculpatory, and therefore falls outside the scope of *Brady*.

The Court agrees with Judge Ostby that there is no prosecutorial misconduct as to "false" or "staged" testimony here that warrants the granting of a habeas

petition. As to Sartain's objection, the Court finds that there is no *Brady* violation. Accordingly, Sartain's claim of prosecutorial misconduct will be denied.

## IV. Ineffective Assistance of Appellate Counsel

### A. Speedy Trial

Sartain objects to Judge Ostby's conclusion that appellate counsel did not perform unreasonably as to the speedy trial issue. Upon de novo review of the record, the Court finds that Judge Ostby's conclusions are sound, and that this claim will be denied per her recommendation.

### B. Prosecutorial Misconduct

Sartain objects to Judge Ostby's finding that appellate counsel's failure to raise the issue of prosecutorial misconduct was neither incompetent nor prejudicial. As discussed above, there is no evidence to support the conclusion that such failure affected Sartain's rights, and despite Sartain's claim to the contrary, appellate counsel was under no obligation to raise the issue on direct appeal. The Court agrees with Judge Ostby in all respects on this issue, and will therefore accept her recommendation to deny this claim.

## V. Motions for Discovery, Evidentiary Hearing, and Counsel

In response to the State's filing of portions of the state court record, Sartain renewed his motion for counsel, which was previously denied by Judge Ostby

14

(Doc. 7), and moved for an evidentiary hearing. (Doc. 13).

The Court is "'not required to hold an evidentiary hearing' when the state-court record 'precludes habeas relief' under § 2254(d)'s limitations." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1392 (2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). The Rule 4 screening performed by Judge Ostby and reviewed de novo by this Court does not require any evidence outside of the state court records, and there are no outstanding factual issues relevant to any claim that would affect the outcome here. It is not clear what, if anything, an evidentiary hearing would accomplish. For these reasons, and because the state court record precludes habeas relief, the Court will deny Sartain's motion for an evidentiary hearing and for assistance of counsel.

Because the Court agrees with Judge Ostby that Sartain has failed to show "reasons" or "good cause" for his specific discovery requests, it will not disturb her order denying those requests.

## VI. Certificate of Appealability

Judge Ostby advises the Court that a certificate of appealability ("COA") is not warranted, and Sartain does not address or object to the issue. The Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should

15

issue as to the claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Upon de novo review of all Sartain's claims, the Court agrees with Judge Ostby's findings as to the issuance of a COA, and will accept her recommendation. Because Sartain presents no open questions and nothing on which reasonable jurists could disagree, a COA is not warranted and will not be issued.

## VII. Conclusion

Upon de novo review, I agree with Judge Ostby's Findings and Recommendations (Doc. 14) and therefore adopt them in full.

Accordingly, IT IS ORDERED that the Mr. Sartain's Petition is DENIED on the merits, and a certificate of appealability is DENIED.

IT IS FURTHER ORDERED that Petitioner's motion for an evidentiary hearing and renewed motion to appoint counsel (Doc. 13) is DENIED.

The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner Sartain.

Dated this 2nd day of December, 2013.

/s/ Dana L. Christensen
Dana L. Christensen, Chief District Judge
United States District Court